UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BRENDAN MacWADE, ANDREW             :
SCHONEBAUM, JOSEPH GEHRING, JR.,    :
PARTHA BANERJEE, and NORMAN         :
MURPHY,                             :
                                    :
                 Plaintiffs,      :
                                    :       05 Civ. 6921 (RMB) (FM)
    vs.                             :
                                    :
RAYMOND KELLY, Commissioner of the New   :
York City Police Department; and THE CITY :
OF NEW YORK.                        :
                                    :
                 Defendants.      :
------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MEMORANDUM OF LAW OBJECTING TO MAGISTRATE'S DISCOVERY ORDER AND IN SUPPORT OF PLAINTIFFS' OBJECTIONS


Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION
  FOUNDATION, by

CHRISTOPHER DUNN
JEFFREY FOGEL
ARTHUR EISENBERG
DONNA LIEBERMAN
125 Broad Street, 17th Floor
New York, N.Y. 10004
(212) 344-3005

Counsel for the Plaintiffs

Dated: August 24, 2005
      New York, N.Y.

# PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MEMORANDUM OF LAW OBJECTING TO MAGISTRATE'S DISCOVERY ORDER AND IN SUPPORT OF PLAINTIFFS' OBJECTIONS

The City has filed a memorandum objecting to Magistrate Judge Maas's discovery order of August 18, 2005, which directs the defendants to disclose confidentially to plaintiffs' counsel a sample of certain statistical information about the subway search program at issue in this case. In its memorandum the City contends that this Court essentially has no role to play in assessing the efficacy of the NYPD's unprecedented policy of subjecting millions of New Yorkers to the possibility of suspicionless searches and thus that Judge Mass abused his discretion in ordering the City to produce information about the scope of the challenged search program.

Setting aside for now its fundamental misunderstanding of the role of the courts in this matter, the City fails to recognize that the only issue presently before the Court concerns the discoverability -- and thus relevance -- of information about the efficacy of the subway search program. Since that information plainly is relevant to the plaintiffs' claim and since the City fails to identify any harm that may follow from the confidential disclosure of the information Judge Maas has ordered disclosed, the Court should reject the City's objections.

The plaintiffs, however, object to certain aspects of Magistrate Maas's order and ask the Court to amend it in limited respects. Specifically, without knowing of the existence of certain NYPD documents and without input from the parties, Magistrate Maas attempted to craft a sampling technique. While scientifically valid sampling can be an appropriate discovery procedure, the validity of Magistrate's Maas's sample cannot be ascertained from his decision. More importantly, the need to resort to this potentially complicated procedure may now be

1

unnecessary in light of the City's disclosure two days ago of the existence of various documents apparently reporting key details of the subway search program.

Finally, Magistrate Maas's order does not address at all the issue of the discoverability of information about the number of searches conducted under the program. In light of the relevance of this information, the plaintiffs respectfully ask that this Court address that issue.

## INTRODUCTION

The plaintiffs are five individuals who on August 4, 2005, filed this action seeking an injunction against an NYPD program under which police officers are conducting suspicionless searches of the personal belongings of people seeking to use the New York City subway system. The plaintiffs allege that the subway search policy is unconstitutional because it authorizes searches by the police without individualized suspicion and is not sufficiently effective in terms of detection or deterrence to justify the suspicionless searches. *See, e.g.,* Complaint ¶ 5.

On the evening before filing suit, plaintiffs' counsel provided the City with a discovery request that sought, among other things, documents containing information about the efficacy and scope of the program. The parties appeared before the Court on August 10, at which time the City sought an order barring all discovery beyond a few documents and further requested that no hearing take place in this matter. The Court rejected those requests, directed the parties to proceed with discovery, and directed the parties to present specific discovery disputes to Magistrate Maas. *See* Transcript of Status Conference at 14-18 (Aug. 10, 2005).

Following a conference later that day with the parties, Judge Maas set an expedited briefing schedule to address the City's invocation of the law-enforcement privilege to object to

certain discovery sought by the plaintiffs. Pursuant to that schedule, the City filed a memorandum -- but no motion -- that specifically addressed only documents revealing "the number and location of stations at which inspections have taken place, the numerical frequency with which bags are inspected, and the actual number of bags inspected." Defendants' Memorandum of Law in Support of their Application for a Protective Order at 1 (Aug. 12, 2005). In conjunction with their memorandum, the defendants submitted a declaration from NYPD Deputy Commissioner of Intelligence David Cohen and a declaration from lead defense counsel Gail Donoghue.

The plaintiffs filed a responsive memorandum along with an affirmation from plaintiffs' counsel attaching various documents. In their memorandum, the plaintiffs noted, as they had stated to Judge Maas in the August 10 conference, that they were not seeking any information about the numerical frequency with which bags are or have been searched. The plaintiffs also explained that they were not seeking any information about the location of stations at which bags have been searched. *See* Plaintiffs' Memorandum in Response to Defendants' Memorandum of Law in Support of their Application for a Protective Order at 2-3 (Aug. 15, 2005). What they were seeking, as noted in the memorandum, was to learn the following types of information about the scope of the search program:

- The number of days when searches were not conducted at any subway entrance;
- On days when some searches were conducted, the extent to which on those days no searches were conducted at any subway entrance;
- On those days when some searches were conducted, the number of subway stations (and entrances) where searches were taking place at any given time.

*See id.* at 3. As for the number of searches, the plaintiffs explained that they did not seek any

information about the specific number of searches at any specific time or location. Rather, they sought only the total number of searches conducted on each day (without needing to know the specific dates to which the totals corresponded). *See id.*

Magistrate Maas issued his decision on August 18. That decision directs the City to produce a sampling of certain general statistical information that is not tied to any specific dates or subway locations. *See* Discovery Order 9-10. At the same time, it appears to limit the plaintiffs' discovery to this information. *See id.* at 9 ("[T]hese competing goals can be both be accomplished by requiring the defendants to provide only the following additional discovery:"). Finally, it makes no mention of the issue of discovery about the number of searches.

The City has now filed a memorandum objecting to Magistrate Maas's order; it has not filed any additional materials in support of its position. The plaintiffs submit this memorandum, along with an affirmation from plaintiffs' counsel and a declaration from a person knowledgeable in sampling technique, in response to the City's objections and in support of their own limited objections.

## I. NO BASIS EXISTS FOR CONCLUDING THAT MAGISTRATE MAAS ABUSED HIS DISCRETION IN ORDERING THE DISCLOSURE OF STATISTICAL INFORMATION ABOUT THE SUBWAY SEARCH PROGRAM.

The City challenges Magistrate Maas's ruling with respect to the defendants' assertion of the law-enforcement privilege in the context of a discovery dispute. The standards governing the City's appeal in this matter are well-established. As this Court has explained,

> When considering objections to an order issued by a magistrate judge concerning a nondispositive matter, the Court shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. An

4

order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure. **A magistrate judge's resolution of discovery disputes deserves substantial deference**.

*Surles v. Air France*, 210 F.Supp.2d 501, 502 (S.D.N.Y. 2002) (emphasis in original; internal quotations and citations omitted). The defendants contend that the "Magistrate's order in this case is contrary to law because . . . it did not weigh the unrebutted evidence of the harm of disclosure and gave undue weight to the need for disclosure based on an erroneous analysis of the applicable law." Defendants' Memorandum at 5. Neither contention has merit.

A. <u>The Law Enforcement Privilege Is a Qualified One Requiring the Court to Balance the Need for the Information Against Certain Law-Enforcement Concerns.</u>

As Magistrate Maas noted, the law-enforcement privilege is not absolute. Rather, it is a qualified privilege that involves a balancing of the litigant's need for information against certain law-enforcement concerns. *See, e.g., Otterson v. National Railroad Passenger Corp.*, 228 F.R.D. 205, 207 (S.D.N.Y. 2005) (and cases cited therein); *see generally In Re Department of Investigation*, 856 F.2d 481, 483-84 (2d Cir. 1988) (discussing general purposes of privilege).

In this balance, the litigant's substantial need for the information is the most significant factor for disclosure. *Otterson*, 228 F.R.D. at 209 (citing *United States v. Davis*, 131 F.R.D. 391, 396 (S.D.N.Y. 1990)). In addition, law-enforcement concerns "must be balanced against the public's right to know and the 'great weight afforded to federal law in civil rights actions against police departments.'" *Id.* (quoting *Nat'l Congress for Puerto Rican Rights*, 194 F.R.D. 88, 96 (S.D.N.Y. 2000)).

5

Finally, the party seeking to invoke the privilege -- in this case the City -- "bears the burden of justifying its application." *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988) (citing *Von Bulow v. Von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)).

B. The Defendants Have Failed to Establish Harm that Will Follow from Disclosure of the Information that Magistrate Maas Ordered Produced.

The City argues that Magistrate Maas failed to "weigh the harm of disclosure as described in the sworn declaration of Commissioner Cohen." Defendants' Memorandum at 6. Yet Magistrate Maas specifically discussed Commissioner Cohen's declaration. *See* Discovery Order at 8. While the defendants may not agree with his assessment of that declaration, they cannot seriously suggest that Judge Maas failed to take it into account.

Beyond that, the City fails to explain what harm would arise from disclosure to plaintiffs' counsel of the statistical information Judge Maas ordered be disclosed, which reveals nothing about search activity on any particular date or at any particular location. *See* Discovery Order 9-10. Though they could have, the defendants have submitted no supplemental affidavit attesting to any such harm. *See Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) (discussing option available to party appealing magistrate order to supplement record with factual information).[1] And their memorandum simply asserts that "the disclosure of representative information which will reveal the strategies and techniques at the heart of the Program will cause substantial and unremediable harm" without offering any explanation as to how the information ordered by Judge Maas would in fact reveal "strategies and techniques at the heart of the program." *See*

---

[1] Nothing in Deputy Commissioner Cohen's declaration addresses the consequences of disclosure of the specific information at issue in Magistrate Maas's order.

Defendants' Memorandum at 6-7.[2]

In the absence of such an explanation (and none is apparent to the plaintiffs), no basis exists for invoking the law enforcement privilege or for concluding that Judge Maas was clearly erroneous. *See, e.g., Haus v. City of New York*, 2004 WL 3019762 at **4-5 (S.D.N.Y. Dec. 29, 2004) (holding that NYPD declaration not specific enough about explanation of harm to allow invocation of law-enforcement privilege).

### C. The Information Ordered Disclosed by Magistrate Maas Plainly Is Relevant to the Plaintiffs' Claims.

The City next argues that Magistrate Maas abused his discretion because, according to the defendants, this Court has virtually no role to play when in assessing the efficacy of the subway search program. Rather, they essentially take the position that the NYPD's representation that the program is an effective one is the end of the inquiry into the constitutionality of the program. *See* Defendants' Memorandum at 7-12.

The short answer to the City's argument is that they confuse the legal standards governing discovery with the standards governing the ultimate adjudication of the plaintiffs' claims. At this

---

[2]Not only do the defendants fail to explain how the confidential disclosure of this statistical information will cause harm, they fail to explain how their position can be squared with the fact that the City to has released considerable other information about the details of the search program. For instance, the City chose to disclose the specific procedure by which people are being selected for search -- by a set numerical formula -- and publicly released the internal NYPD guidelines governing the search program. *See* Affirmation of Christopher Dunn ¶ 3 & Exhibit B (Aug. 15, 2005) (submitted in conjunction with memorandum of law submitted to Magistrate Maas). This information was not otherwise available to the public and would seem to reveal far more about "strategies and techniques at the heart of the program" than the statistical information sought by the plaintiffs, the essence of which is apparent to anyone using the subway system.

juncture of the proceedings the only question before this Court is whether the information that Judge Maas ordered disclosed is relevant to the plaintiffs' claims.

That information about the efficacy of a program of suspicionless searches is relevant to a challenge to that program is indisputable. The City contends that its search program qualifies for the "special needs" exception to the Fourth Amendment's ordinary requirement of individualized suspicion. *See* Defendants' Memorandum at 7 (discussing "standard to be applied in a Fourth Amendment special needs case"). Just last year, the Second Circuit twice explained that in such cases the efficacy of the program is central to adjudication of a constitutional challenge to the program. For instance, in *United States v. Palmieri* the court explained, "[W]e must weigh the governmental conduct -- in light of the purported special need and against the privacy interest advanced -- by analyzing three principal factors: (1) the nature of the privacy interest allegedly compromised by the challenged governmental conduct; (2) the character of the intrusion imposed by the challenged conduct; and (3) the nature and immediacy of the state's concerns <u>and the efficacy of the governmental conduct in meeting them</u>." 392 F.3d 73, 81 (2d Cir. 2004) (emphasis added; citations and quotations omitted). Similarly, in *United States v. Lifshitz* the court noted that "the search program at issue must seek the minimum of intrusiveness <u>coupled with the maximum effectiveness</u> so that the searches 'bear a close and substantial relationship' to the government's 'special needs.'" 369 F.3d 173, 186 (2d Cir. 2004) (emphasis added).

Moreover, as the Second Circuit further explained in yet another decision from 2004, this Fourth Amendment balancing test requires "a <u>fact-specific</u> balancing of the intrusion . . . against the promotion of legitimate governmental interests." *N.G. v. Connecticut*, 382 F.3d 225, 231 (2d Cir. 2004) (discussing application of special needs test to program of suspicionless searches of

juveniles) (emphasis added, internal quotations and citation omitted). Highlighting the need for a full factual record about the effectiveness of the program is the Court of Appeals' decision in *Lifshitz*, where the Second Circuit reversed the District Court and remanded the case for the development of a fuller factual record after noting that "the efficacy of the [search program] is not pellucidly clear" and that "it is not clear from the record as it stands whether or not [the searching] is sufficiently effective to justify its implementation." 369 F.3d at 192-93.

None of the earlier decisions from the Supreme Court relied upon by the City in any way suggest to the contrary. Indeed, all of those decisions make clear that the efficacy of the program becomes a central consideration in those narrow instances in which the challenged program qualifies for the so-called "special needs" exception to the usual rule requiring individualized suspicion. While the parties will disagree about what those -- and other -- decisions say about the specific standards governing this Court's assessment of the efficacy of the program, that issue is not now before the Court. Rather, the only issue presented at this juncture is whether information bearing on the efficacy of the subway search program is relevant to the plaintiffs' claim. The decisions from the Supreme Court and the Second Circuit uniformly recognize the relevance of program efficacy information to this type of challenge, and the City fails to cite a single case denying discovery of such information.[3]

---

[3] Not only do all the relevant decisions contradict the City's position, it's own actions have highlighted the central relevance of the efficacy of the search program. The very first submission to this Court was a letter from Ms. Donoghue that was replete with representations about the efficacy of the subway search program. *See* Letter to Honorable Richard M. Berman from Gail Donoghue (Aug. 9, 2005) (attached as Exhibit A of Affirmation of Christopher Dunn (Aug. 15, 2005)). Having made and relied upon such representations to defend its program, the City cannot turn around and suggest somehow that information about the effectiveness of the program cannot be discovered by the plaintiffs because it is not relevant. *See* Discovery Order at
(continued...)

As for the specific information sought by the plaintiffs, Judge Maas observed, "At a minimum, discovery along the lines sought by the plaintiffs directly addresses the efficacy of the City's subway bag search program as a tool to detect and deter terrorist activity." Discovery Order at 6. The City does not dispute this contention, much less establish that it is clearly erroneous.

The information sought by the plaintiffs is plainly relevant to their constitutional challenge to the subway search program. Since the City has failed to demonstrate that Magistrate Maas abused his discretion in ordering the disclosures to which they object, the Court should reject their appeal.

## II. THE PLAINTIFFS OBJECT TO THE SAMPLING PROCEDURE DESIGNATED IN THE MAGISTRATE'S DISCOVERY ORDER.

Having concluded that "discovery along the lines sought by the plaintiffs directly addresses the efficacy of the City's subway bag search program as a tool to detect and deter terrorist activity," Discovery Order at 6, Magistrate Maas nonetheless substantially narrowed the information to be produced by the City by resorting to a sampling procedure with respect to two categories of information (the number of stations where no searches were taking place on days when some searches took place and the number of subway entrances unmonitored at certain times during days when searches were taking place). *See* Discovery Order at 9-10.

Though plainly attempting to fashion a reasonable compromise, Judge Maas did not

---

[3](...continued)
8 ("They thus seek to use some information about the scope of the program as a shield, but object to the plaintiffs' effort to use other such information as a sword.").

10

consult with the parties about his proposed sampling, and the plaintiffs had no opportunity to comment on or object to this procedure. *See* Supplemental Affirmation of Christopher Dunn ¶ 3 (Aug. 24, 2005). Moreover, Judge Maas did not know about certain NYPD documents the existence of which the City only disclosed this past Monday. In light of this disclosure and in light of the readily apparent problems with the procedure proposed by Judge Maas, the plaintiffs respectfully urge the Court to modify that aspect of his decision.

As noted earlier, the plaintiffs seek information about three categories of information bearing on the scope of the subway search program:

- The number of days when searches were not conducted at any subway entrance;

- On days when some searches were conducted, the extent to which on those days no searches were conducted at any subway entrance;

- On those days when some searches were conducted, the number of subway stations (and entrances) where searches were taking place at any given time.

In response to the document request the plaintiffs provided to the City on August 3, the defendants this past Monday (August 22) served a formal response with a privilege log that included the following entry: "Schedules of checkpoint locations including the borough, time and staffing of checkpoints." Defendants' Response to Plaintiffs' First Request for Documents (Aug. 22, 2005) (attached as Exhibit D to Supplemental Dunn Affirmation). If these documents are as described, they most likely contain the information sought by the plaintiffs.

As far as the plaintiffs know, Judge Maas was unaware of the existence of these documents when he issued his order. (The plaintiffs certainly were not aware of them.) This is important because Judge Maas indicated that he resorted to a sampling procedure in part "to

11

reduce the burdensomeness of the plaintiffs' request." *See* Discovery Order at 9 (paragraph b). Setting aside the fact that the City never contended that production of this information would be burdensome, this week's disclosure that the NYPD has a discrete set of documents reporting the information sought by the plaintiffs should eliminate any concern about burdensomeness.

Beyond this, the sampling procedure presents readily apparent problems. Magistrate Maas limited discovery about the number of stations where searches have taken place to a maximum of five dates (7/22, 7/30, 8/1, 8/9, and 8/17, if searches took place on those dates). *See* Discovery Order at 9 (paragraph a). Second, with respect to those five dates, he directed the City simply to produce information about the number of stations where no searches took place each day (rather than disclosing information about the number of stations where no searches were taking place at those times when some searches otherwise were taking place). *See id.* Finally, again with respect to those five dates, he limited to three dates, to be selected by the defendants, information about the number of subway entrances at which searches were not taking place. *See id.* at 9-10 (paragraph c).

Starting with the selection of the five dates, Magistrate Maas does not explain why or how he picked these dates, beyond noting that he selected them "on a sampling basis and to reduce the burdensomeness of the plaintiffs' request." *See id.* at 9. While it is true that the five dates are a "sample" of the universe of all dates the program has been in effect, Magistrate Maas's decision provides no information about how he selected that sample. In the absence of such information, it is not possible to draw conclusions about whether the five dates represent a statistically valid sample. *See* Declaration of Christopher Hansen ¶¶ 2-8 (Aug. 24, 2005). While the plaintiffs have no objection in principle to sampling, resort to this procedure in this case

12

would have to be done pursuant to a known methodology that would assure the Court and the parties that the sample was valid. No such methodology is apparent from Magistrate Maas's order. *See id.*

The second problem that presents itself is that Magistrate Maas's procedure allows the defendants to select a subsample of the designated sample of five days for purposes of producing information about the number of subway entrances that were unmonitored during certain times when searches were taking place. Whatever might be the merits of sampling in this matter, the sampling must be done in an objective manner. To allow one party to choose the sample would destroy the validity to that procedure. *See* Hansen Declaration ¶ 9.

Given the central importance of information about the efficacy of the subway search program, the existence of the recently disclosed NYPD documents, and the apparent problems with the sampling procedure, the plaintiffs respectfully urge the Court to have the City produce to plaintiffs counsel under an appropriate protective order the NYPD documents identified in the defendants' privilege log. Those documents can be redacted so that no information about the dates or locations of searches is not revealed, leaving the plaintiffs' counsel simply with general statistical information about the program. Alternatively, if the documents do not include all the information sought by the plaintiffs, the Court should order the City to produce the requested information or devise an appropriate sampling procedure.

III. THE MAGISTRATE'S DISCOVERY ORDER DOES NOT ADDRESS THE ISSUE OF DISCOVERY ABOUT THE NUMBER OF SEARCHES.

Finally, Magistrate Maas's order makes no mention of issue of the plaintiffs' ability to secure information about the number of searches conducted pursuant to the City's subway search program. The City's specifically identified this as one of the types of information about which it was seeking a protective order, Defendants' Memorandum of Law in Support of their Application for a Protective Order at 1 (Aug. 12, 2005), and the plaintiffs are unsure as to where the parties now stand on this matter in light of Magistrate Maas's order.

The number of searches conducted is relevant both in terms of assessing the intrusiveness of the program and its effectiveness. With respect to effectiveness and to the specific issue of the extent to which the program is effective in detecting unlawful activity, the Supreme Court has pointed to statistics about the proportion of instances that a search program has detected unlawful activity in assessing its effectiveness. *See, e.g., Michigan Department of State Police v. Sitz*, 496 U.S. 444, 454 (1990) (discussing use of statistics about detection of unlawful activity as gauge of effectiveness of program). As a simple mathematical matter, it is not possible to determine this proportion without knowing the number of searches that have taken place. The plaintiffs therefore ask the Court to address this issue and to direct the City to produce statistics, which need not be particular to any date or location, about the number of searches conducted during the program.

## CONCLUSION

For all the foregoing reasons, the plaintiffs request that the Court reject the defendants' objections to the discovery order of Magistrate Maas. The plaintiffs further request that the Court modify that order with respect to the sampling procedure it establishes. Finally, the plaintiffs ask the Court to address the issue of discovery about the number of searches.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION
 FOUNDATION, by

_____
CHRISTOPHER DUNN (CD-3991)
ARTHUR EISENBERG (AE-2012)
JEFFREY FOGEL (JF-3948)
DONNA LIEBERMAN (DL-1268)
125 Broad Street, 17th Floor
New York, N.Y. 10004
(212) 344-3005

Counsel for the Plaintiffs

Dated: August 24, 2005
        New York, N.Y.

disobjmem.sub

## CERTIFICATE OF SERVICE

      I hereby certify that on August 24, 2005, I caused to be served by facsimile and by United States First Class Mail and the attached Plaintiffs' Memorandum of Law in Response to Defendants' Memorandum of Law Objecting to Magistrate's Discovery Order and in Support of Plaintiffs' Objections on the following counsel of record:

                Gail Donoghue
                New York City Law Department
                100 Church Street
                New York, N.Y.  10007

                _____
                CHRISTOPHER DUNN

disobjmem.sub