# NYCLU
**NEW YORK CIVIL LIBERTIES UNION**

125 Broad Street
New York, NY 10004
(212) 344-3005
Fax (212) 344-3318
www.nyclu.org

Christopher Dunn
Associate Legal Director
(212) 344-3005, ext. 226
cdunn@nyclu.org

*[Handwritten: letters are admitted into the record subject to any Court rulings. See o.s. conference with court dated 11/10/05.]*

BY FACSIMILE ONLY

February 17, 2006

Honorable Richard M. Berman
United States District Judge
United States District Court
Southern District of New York
40 Centre Street
New York, N.Y. 10007

**SO ORDERED:**
Date: 2/21/06
*[signature]*
Richard M. Berman, U.S.D.J.

Re: *MacWade v. Kelly*, 05 Civ. 6921 (RMB)

Dear Judge Berman:

On behalf of the plaintiffs, I write to request your assistance in completing the record in preparation for the appeal in this matter. Next Wednesday the plaintiffs will be filing their briefs and a joint appendix. The plaintiffs wish to include in the joint appendix two letters the parties sent to the Court on November 10, 2005 concerning the NYPD checkpoint data. (I enclose copies of the two letters).

Because ECF procedures do not allow for the filing of letters, those letters were not filed with the Clerk's Office and are not now part of the record in this matter. In such circumstances we understand the Court can enter a letter into the record. I therefore write to request that you do so. Though they do not dispute that these letters were sent to the Court, the defendants have informed us that they do not consent to this request.

Given the schedule under which we are operating, I would greatly appreciate hearing from your chambers at your earliest convenience about this matter.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/21/06

Sincerely,

*[signature]*

Christopher Dunn

c: Senior Corporation Counsel Scott Shorr

The New York Affiliate of the American Civil Liberties Union | Claudia Angelos, President | Donna Lieberman, Executive Director



| | THE CITY OF NEW YORK | |
|---|---|---|
| MICHAEL A. CARDOZO<br>*Corporation Counsel* | **LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | SCOTT SHORR<br>*Senior Counsel*<br>TEL: 212-788-1089<br>FAX: 212-788-1054 |

February 17, 2006

BY FAX ONLY

The Honorable Richard M. Berman
United States District Judge
United States District Court
Southern District of New York
40 Centre Street
New York, New York 10007

                        Re:     *MacWade v. Kelly*, 05 Civ. 6921 (RMB)

Dear Judge Berman:

On behalf of the defendants in the above-captioned case, we write in response to the letter the New York Civil Liberties Union ("NYCLU") faxed to this Court earlier this afternoon.

Plaintiffs ask this Court to add to the record two letters, dated November 10, 2005, concerning counsel's access to confidential data regarding the City's Container Inspection Program (the "November 10 Letters"). The City's trial counsel recalls a telephone conference with this Court later on November 10, during which this Court may have addressed the issue raised in the November 10 Letters, but nothing on the Docket Sheet reflects this Court's consideration of those letters. Indeed, unlike many other letters submitted to this Court during the litigation of this case, this Court did not docket the November 10 Letters as "Endorsed."

Without Docket Sheet evidence of this Court's consideration of the November 10 Letters, the City believes it would be inappropriate to present the November 10 Letters to the Second Circuit as documents relied on by this Court in rendering its decisions. Accordingly, if this Court concludes that it considered the November 10 Letters, the City has no objection to their inclusion on an amended Docket Sheet.

                                                                        Respectfully submitted,

                                                                        Scott Shorr (SS 6149)

cc:    Chris Dunn, Esq. (by fax)



**NYCLU**
NEW YORK CIVIL LIBERTIES UNION

125 Broad Street
New York, NY 10004
(212) 344-3005
Fax (212) 344-3318
www.nyclu.org

Christopher Dunn
Associate Legal Director
(212) 344-3005, ext. 226
cdunn@nyclu.org

BY FACSIMILE ONLY

November 10, 2005

Honorable Richard M. Berman
United States District Judge
United States District Court
Southern District of New York
40 Centre Street
New York, N.Y. 10007

Re: *MacWade v. Kelly*, 05 Civ. 6921 (RMB)

Dear Judge Berman:

I write to follow up on the telephone conference with the Court this past Monday. Shortly after the conference, I went to the offices of Corporation Counsel and reviewed the documents I understand were submitted to you. Upon completion of that review, I informed defendants' counsel that there was additional specific information the plaintiffs needed. Having not heard back from the defendants since then, I called and spoke with Ms. Donoghue this morning, when she informed me the City would not produce any further information absent a court order. I therefore write to bring this matter to your attention and request another conference.

As has been our position since the outset of this litigation, central to a determination of the effectiveness of the NYPD's search program is a factual record about the scope of the program. The documents I reviewed provide information about the total number checkpoints each day since the NYPD program started. If checkpoints lasted the entire twenty-four hours of each day, the information in the documents would tell one the scope of the program, as one could easily calculate the percentage of entrances covered by checkpoints. However, we know from Commissioner Sheehan's testimony that checkpoints last only several hours at a time (Trial Testimony at 178). It therefore is not possible to ascertain as a matter of fact the scope of the program from only the information in the documents I reviewed. Rather, one needs to have some sense of the distribution of the checkpoints during the day.

On this point, Commissioner Sheehan offered some testimony during the trial about the distribution of checkpoints. Specifically, he indicated that the checkpoints were focused during the rush hours and were infrequent between midnight and 6:00 a.m. (Trial Testimony at 178-79). Thus, a possible distribution might be 40% during the morning rush hour, 40% during the evening rush hour, 15% during the day between the two, and 5% at night between the two.

The New York Affiliate of the American Civil Liberties Union | Claudia Angelos, President | Donna Lieberman, Executive Director

If this were the approximate distribution, one then could calculate the actual coverage of the program. One could first calculate the approximate number of checkpoints during the four periods (40% of total checkpoints for each rush hour period, 15% of the total checkpoints for the day, and 5% of the total checkpoints at night), and then divide that number into the total number of entrances to the subway system (which is established by Mr. Russianoff's declaration to be at least 1,000).

Thus, to take a purely hypothetical example: If on a typical weekday, there were 600 total checkpoints and the above distribution were in place, one would know that the maximum coverage during the day was 24% of all entrances (during the rush, 40% of 600 checkpoints, for a total of 240 checkpoints, divided into 1000 entrances, yielding coverage of 24% of all entrances during those periods). Similarly, one would know the minimum coverage was 3% of all entrances (overnight, 5% of 600 checkpoints for total of 30 checkpoints during that period, divided into 1000 entrances, yielding coverage of 3% of entrances during that period).

Given Mr. Sheehan's testimony, it is likely that the Department is using a relatively consistent distribution of checkpoints. It was this distribution I asked Ms. Donoghue to provide me, which of course would also be under seal. She informed me that the defendants would provide no further information absent a court order.

Rather, Ms. Donoghue suggested that, based on Mr. Sheehan's testimony, one could make reasonable assumptions about the distribution of checkpoints and then make the calculations noted above. I believe there is no reason for the Court or the plaintiffs to be limited to determinations based on assumptions when the actual information may be readily available. And without this information, this Court, the plaintiffs, and any reviewing court will be left to hypothesize about an important piece of factual information in this case, which does not serve anyone's purposes.

I therefore respectfully request that the Court hold a telephone conference at its earliest convenience to discuss this matter. I am available anytime today after 4:00 and anytime tomorrow.

Sincerely,

Christopher Dunn

c: Gail Donoghue, Special Counsel to the Corporation Counsel

**Gail Donoghue**
*Special Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007-2601

(212) 788-0500
FAX (212) 442-8602
gdonoghu@law.nyc.gov

November 10, 2005

**VIA FACSIMILE (212) 805-6717**

Hon. Richard M. Berman
United States District Judge
United States District Court
Southern District of New York
40 Centre Street, Courtroom 706
New York, NY 10007

RECEIVED
NOV 10 2005
CHAMBERS OF
RICHARD M. BERMAN
U.S.D.J.

Re: MacWade v. Kelly, 05 CV 6921(RMB)

Your Honor:

We write to respond to plaintiffs' counsel's letter of today requesting a conference concerning his request that the City be compelled to provide additional information about the time of day when inspections occur which is not contained in the confidential information provided to the Court and which Mr. Dunn reviewed. The City opposes this application.

Defendants provided the confidential information to the Court as part of their opposition to the admissibility of plaintiffs' survey data and to enable the Court to assess the probative value of that data, in the event it was admitted. The evidence adduced at trial concerning the survey data was that the observers visited stations throughout the day with the exception of midnight to six a.m. No witness for plaintiffs testified about the relative number of inspections that took place during any particular time period. Thus, there is no need for information about when inspections took place for the Court to assess the probative value of the survey data.

More importantly, plaintiffs proceeded at trial on the theory that any number of searches which left open access to the system at any time of day would be ineffective. When

pressed by the Court, Mr. Pena testified that if 90% of the stations were inspected the Program might be effective. However, he testified (as did Commissioners Sheehan and Cohen and Richard A. Clarke), that there is no threshold number of inspections for the purpose of determining whether the Program is effective. Trial Tr. 248:25-249:17.

It appears to us that given the huge discrepancy between the conclusion reached by plaintiffs as a result of the survey data, namely that they observed 34 inspections in 23 days, and the actual number of inspections reflected in the confidential information, plaintiffs are now seeking post-trial discovery to advance an argument they have neither advanced nor supported with any evidence in the record. Plaintiffs are now in a position to determine whether or not 90% of the stations are being inspected and the time of day will not affect that fact. If there are less than 90% being covered, plaintiffs' theory does not change and there is no need for additional data.

The Court's decision on the City's motion for a protective order, reaffirmed by the Court's memo endorsement on November 7, 2005, protects the City from the requested disclosure.

Respectfully,

Gail Donoghue

cc: Christopher Dunn, Esq. (by fax #212-344-3329)